# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **Nina Tyler,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Docket No. 4:18-cv-01095** |
| | § | |
| **v.** | § | |
| | § | |
| **Mirand Response Systems, Inc.,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT MIRAND RESPONSE SYSTEMS, INC.'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant Mirand Response Systems, Inc. ("**Defendant**" or "**Mirand**"), files its

*Motion for Summary Judgment* as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. 2

TABLE OF AUTHORITIES ...................................................................................... 3

NATURE AND STAGE OF PROCEEDINGS ........................................................... 6

STATEMENT OF THE ISSUES ............................................................................... 6

SUMMARY OF ARGUMENT .................................................................................. 7

FACTS ....................................................................................................................... 7

ARGUMENTS & AUTHORITIES ........................................................................... 8

   A.    Standard of Law for Summary Judgment ..................................................... 8

   B.    Plaintiff's claim under the FDCPA must fail ............................................... 10

   C.    Plaintiff's claim under the TCPA must fail................................................... 13

      *1.*    *Defendant did not use an ATDS* ......................................................... 14

      2.    *Plaintiff gave consent to being called*....................................................... 17

CONCLUSION......................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018)......................................................15, 16

*Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744 (W.D. Tex. 2011)...............18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................9

*Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259 (C.D. Cal. Aug. 23, 2010)...........................................................................................11, 12, 13

*Carman v. CBE Group, Inc.,* 782 F. Supp. 2d 1223 (D. Kan. 2011) ................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)....................................................................9

*Cherkaoui v. Santader Consumer U.S., Inc.*, 32 F. Supp. 3d 811 (S.D. Tex. 2014).........18

*Clayton v. Asset Plus Companies*, *LP*, No. 4:13-CV-2862, 2014 WL 6388430 (S.D. Tex. Nov. 14, 2014) ..........................................................................................................10, 12

*Clingaman v. Certegy Payment Recovery Services*, No. H–10–2483, 2011 U.S. Dist. LEXIS 56368 (S.D. Tex. May 26, 2011)..........................................................10, 11, 13

*Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490 (N.D. Tex. Nov. 10, 2014) ..........................................................................................................................13, 14

*Cunningham v. Credit Mgmt., L.P.*, 3:09–CV–1497–GB(BF), 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010) report and recommendation adopted, 3:09–CV–1497–G(BF), 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010) ....................................................................18

*Diamond Consortium, Inc. v. Hammervold*, No. 17-40582, 2018 WL 2077910 (5th Cir. May 3, 2018)...................................................................................................................14

*Dominguez v. Yahoo, Inc.*, 629 F. App'x 369 (3d Cir. 2015) ..........................................15

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)...............................9

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017) (per curiam) ..........14

*Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004 (N.D. Cal. 2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir. 2009) .......................................................11, 13

*Hill v. Homeward Residential, Inc*., 799 F.3d 544 (6th Cir. 2015) ............................ 18, 19

*Jeter v. Credit Bureau, Inc*., 760 F.2d 1168 (11th Cir. 1985) ........................................... 11

*Karp v. Fin. Recovery Servs. Inc.,* No. A12–CA–985 LY, 2013 WL 6734110 (W.D. Tex. Dec. 18, 2013) ............................................................................................................. 10

*Krapf v. Nationwide Credit, Inc*., No. SACV 09-00711 JVS (MLGx), 2010 U.S. Dist. LEXIS 57849 (C.D. Cal. May 21, 2010) ..................................................................... 11

*Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875 (11th Cir. 2016) ....... 18, 19

*Lee v. Credit Management, LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2012) .................... 10, 11

*Marshall v. CBE Group, Inc.*, No.: 2:16–cv–02406–GMN–NJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018) ...................................................................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ......................... 9

*Pinkus v. Sirius XM Radio, Inc*., No. 16 C 10858, 2018 U.S. Dist. LEXIS 125043, at *125072 (N.D. Ill. July 26, 2018) ................................................................................ 16

*Saltzman v. I.C. Sys., Inc*., No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) ......................................................................................................................................... 12

*Saragusa v. Countrywide*, No. 14-2717, 2016 U.S. Dist. LEXIS 34544 (E.D. La. Mar. 17, 2016) ......................................................................................................................... 18, 19

*Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla. 2010) .............................. 11

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ......................................................... 9

*Waite v. Fin. Recovery Servs., Inc*., No. 8:09-CV-02336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010) ........................................................................................................... 12, 13

## Statutes

15 U.S.C. § 1692d ........................................................................................................... 10

15 U.S.C. § 1692d(5) ....................................................................................................... 10

28 U.S.C. § 2342 .............................................................................................................. 15

47 U.S.C. § 227(a)(1) ........................................................................................... 14

47 U.S.C. § 227(a)(1)(A) ................................................................................ 14, 15

47 U.S.C. § 227(a)(1)(B) ...................................................................................... 14

47 U.S.C. § 227(b) ................................................................................................ 14

47 U.S.C. § 227(b)(1) ........................................................................................... 13

Fed. R. Civ. P. 56(a) .............................................................................................. 8

**Rules**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    23 FCC Rcd. 559 (2008) ........................................................................... 15, 18

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    27 FCC Rcd. 15391 (2012) ............................................................................. 15

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    30 FCC Rcd. 7961 (2015) ............................................................................... 15

## NATURE AND STAGE OF PROCEEDINGS

1.      On April 6, 2018, Plaintiff Nina Tyler ("Plaintiff") filed her Complaint against Defendant Mirand Response Systems, Inc. ("Defendant") (Doc. 1).

2.      Plaintiff brings this action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") (Doc. 1-1).

3.      On August 15, 2018, Defendant timely filed its Answer (Doc. 7).

4.      On April 8, 2019, discovery in this case was closed (Doc. 25).

5.      Pursuant to this Court's order setting deadline to file dispositive motion to April, 13, 2019, Defendant timely files its Motion for Summary Judgment.

## STATEMENT OF THE ISSUES

1.      Under federal law, did Defendant engage in conduct the "natural consequence of which is to harass, oppress, or abuse any person" when it made twenty-four (24) calls over the period of near three (3) months at all times between the hours 9:00 a.m. and 8 p.m. and Plaintiff did not request that Defendant cease its calls to her?  Fed. R. Civ. P. 56.

2.      Under federal law, did Defendant violate the TCPA when its dialing system does not involve random and sequential dialing, requires human intervention to make its calls, and Defendant ceased all calls to Plaintiff when she revoked her consent to be called via an ATDS?  Fed. R. Civ. P. 56.

## SUMMARY OF ARGUMENT

Defendant seeks summary judgment given that Plaintiff's allegations are not supported.  Plaintiff claims that Defendant continued to call her after Plaintiff requested the calls to stop, and that these calls were made with an automated telephone dialing system ("ATDS") (Doc. 1).  The record, however, is absent any evidence that Plaintiff requested calls to stop.  Instead, the record indicates that Defendant ceased calls to Plaintiff once she indicated that Defendant was not to contact her via an ATDS.  Defendant does not utilize an ATDS.  Moreover, all of Defendant's calls to Plaintiff were made with Plaintiff's express consent.  For these reasons, Defendant requests that this Court grant Defendant's *Motion for Summary Judgment*.

## FACTS

1.      Plaintiff incurred an obligation with a creditor, Woodforest National Bank. Exhibit D.

2.      Plaintiff defaulted on her obligation in the amount of $470.96. Exhibit A.

3.      Plaintiff's account with Woodforest National Bank was assigned to Defendant for collection on February 21, 2017. Exhibit A.

4.      Between February 22, 2017 and May 2, 2017, Defendant called Plaintiff twenty-four (24) times. Exhibit 1 at 2–3 ¶ 12–13; Exhibit A.

5.      Plaintiff answered only two of these calls on March 8, 2017 and May 2, 2017. Exhibit 1 at 2 ¶ 10; Exhibit A; Exhibit E; Exhibit F.

6.      During the March 8, 2017 phone call, Plaintiff stated she did not want to receive communication from an ATDS early in the conversation. Exhibit B at 01:28; Exhibit E at 1. However, later in the conversation, Plaintiff consented to being called back on March 22, 2017. *Id.* at 08:20; Exhibit E, at 5, 7; Exhibit 3 at 20:25-21:2, 23:10, 27:2-4.

7.      Plaintiff did not care how Defendant contacted her. Exhibit 3 at 40:6-8.

8.      Defendant utilized the dialing system, DialConnection's DC Contact Center Enterprise to attempt to contact Plaintiff four (4) times after March 8, 2017. Exhibit 1 ¶ 11; Exhibit A.

9.      Defendant manually attempted to contact Plaintiff via telephone thirteen (13) times after March 8, 2017. Exhibit 1 ¶ 11; Exhibit A.

10.     During the May 2, 2017 phone call, Plaintiff revoked consent to be called via an ATDS. Exhibit C at 02:16; Exhibit F at 2.

11.     Plaintiff did not request that Defendant cease calls to her number. Exhibit B; Exhibit C; Exhibit E; Exhibit F.

12.     After the May 2, 2017 call, Defendant ceased all calls to Plaintiff. Exhibit A.

## ARGUMENTS & AUTHORITIES

### A.     Standard of Law for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine

issue for trial and of identifying those portions of the record that demonstrate such absence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson*, 477 U.S. at 247-48. Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id*. at 249-50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Further, a court has no duty to search the record for evidence of a genuine issue. Fed. R. Civ. P. 56(c)(1), (3).

**B.      Plaintiff's claim under the FDCPA must fail**

Plaintiff claims Mirand violated the FDCPA "when it called Plaintiff repeatedly on her cellular telephone and continued to call after being told to stop . . ." (Doc. 1 at 4). Specifically, Plaintiff alleges violations of §§ 1692d and 1692d(5).

Section 1692d prohibits collectors from engaging in any conduct the "natural consequence of which is to harass, oppress, or abuse any person." 15 U.S.C. § 1692d. While not limited to the enumerated activities, 1692d(5) specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

Although whether a collector's conduct constitutes harassment is normally a question of fact, "courts have recognized that, in certain cases, this question can be resolved as a matter of law." *Clayton v. Asset Plus Companies, LP*, No. 4:13-CV-2862, 2014 WL 6388430, at *2 (S.D. Tex. Nov. 14, 2014); *see, e.g.*, *Lee v. Credit Management, LP*, 846 F. Supp. 2d 716, 725 (S.D. Tex. 2012) (granting summary judgment in favor of defendant because debt collector called plaintiff "a handful of times" and spoke to him briefly); *Clingaman v. Certegy Payment Recovery Services*, No. H–10–2483, 2011 U.S. Dist. LEXIS 56368, at *12 (S.D. Tex. May 26, 2011) (granting summary judgment in favor of defendant where defendant placed fifty-five calls to plaintiff in three and a half month period); *Karp v. Fin. Recovery Servs. Inc.*, No. A12–CA–985 LY, 2013 WL 6734110, at *7 (W.D. Tex. Dec. 18, 2013) (granting summary judgment in favor of defendant where defendant placed six calls to plaintiff in two weeks); *Carman v. CBE Group, Inc.*, 782 F.

Supp. 2d 1223, 1229-32 (D. Kan. 2011) (granting summary judgment in favor of defendant where defendant called plaintiff 149 times in a two-month period); *Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment in favor of defendant because "[d]efendant only left a total of six messages, made no more than seven calls in single day, and did not call back the same day after leaving a message.").

Further, these claims require Plaintiff to prove more than just the fact that calls were made. To prove a claim under § 1692d, a plaintiff must show that the repeated calls were made *with the intent* to annoy, abuse, or harass. *See Clingaman*, 2011 U.S. Dist. LEXIS 56368, at *10 (emphasis added); *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir. 2009). Whether conduct harasses, oppresses, or abuses is normally a question for the jury. *Lee*, 846 F. Supp. 2d at 725 (citing *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1179-80 (11th Cir. 1985)). Courts may resolve this question as a matter of law in appropriate cases. *Jeter*, 760 F.2d at 1179-80; *see Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010) ("Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.").

"In determining liability under § 1692d(5), courts often consider the volume and pattern of calls made to the debtor." *Krapf v. Nationwide Credit, Inc*., No. SACV 09-00711 JVS (MLGx), 2010 U.S. Dist. LEXIS 57849, at *7 (C.D. Cal. May 21, 2010). Courts have found that "frequent or even daily debt collection phone calls over a period of months may

be insufficient to state a claim under Section 1692d(5)." *Clayton*, 2014 WL 6388430, at *2. When courts do find a violation, it is usually because there is "a high volume of phone calls . . . typically accompanied by allegations of other objectionable conduct." *Id*. Such egregious conduct might be "calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop." *Waite v. Fin. Recovery Servs., Inc.*, No. 8:09-CV-02336, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010). For example, "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009). Also, "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d. *See Arteaga*, 2010 WL 3310259, at *16.

Here, the record is absent any evidence that indicates that Plaintiff requested Defendant to cease its calls to her.  Defendant's records indicate that Mirand called Plaintiff twenty-four (24) times over four months. Exhibit 1 at 2–3 ¶ 12–13; Exhibit A.  At no point did Plaintiff request to Defendant that it cease its calls to Plaintiff.  Defendant was able to speak with Plaintiff two (2) times: one time on March 8, 2017 and another time on May 2, 2017. Exhibit 1, at 2 ¶ 10; Exhibit A.  On May 2, 2017, Plaintiff spoke with Defendant and stated that her phone number was not to be called via an ATDS. Exhibit C at 02:16; Exhibit F at 2.   Defendant did not place any further calls to Plaintiff after May 2, 2017. Exhibit 1 at 3 ¶ 14; Exhibit A.

The records show that the calls on this debt cannot rise to the level of intentional harassment, abuse, or oppression necessary for Plaintiff to prevail. Defendant did not call daily. <u>Exhibit 1</u>, at 2–3 ¶ 12–13; <u>Exhibit A</u>. Defendant did not call multiple times in a row, call any of Plaintiff's friends or family, or call at odd times. <u>Exhibit A</u>; *Waite*, 2010 WL 5209350, at *3; *Arteaga*, 2010 WL 3310259, at *16. Defendant's twenty-four calls do not amount to a violation of § 1692d.

Furthermore, the burden is upon Plaintiff to prove that Defendant *intended* to annoy, abuse, or harass Plaintiff. *See Clingaman*, 2011 U.S. Dist. LEXIS 56368, at *10; *Gorman*, 435 F. Supp. 2d at 1012.  Plaintiff has no evidence to show Defendant intended to harass her.

The records before this Court show that there was no conduct that can rise to the level of harassment under the FDCPA, and Plaintiff has no evidence that can show any intent to harass or any actual harassment or abuse occurred here.  Accordingly, Plaintiff's §1692d claims should be denied as a matter of law.

## C.    Plaintiff's claim under the TCPA must fail.

Plaintiff also alleges that Defendant violated the TCPA by using an ATDS to call Plaintiff and calling Plaintiff via an ATDS without consent. The elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1); *Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at *3 (N.D. Tex. Nov. 10, 2014). In the present case, the record before this Court is clear: Defendant did not place any telephone call to

Plaintiff's telephone with an ATDS. Nor did Defendant call Plaintiff without consent. Accordingly, Defendant is entitled to summary judgment as a matter of law.

  1. *Defendant did not use an ATDS*

    a. <u>The TCPA restricts random and sequential dialing</u>

  The TCPA prohibits the use of an ATDS to make any calls to a cellular telephone service without the prior consent of the called party. 47 U.S.C. § 227(b); *see, e.g., Crawford*, 2014 WL 5847490, at *3. The starting point of analysis for "any case turning on statutory interpretation [is] the plain language of the statute guides the inquiry." *Diamond Consortium, Inc. v. Hammervold*, No. 17-40582, 2018 WL 2077910 (5th Cir. May 3, 2018) (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam)). An ATDS is an equipment which has the capacity (1) to store or produce telephone numbers to be called, using a random or sequential number generator; and (2) to dial such numbers. 47 U.S.C. § 227(a)(1).

  The statutory definition of an ATDS requires equipment capable of performing at least three tasks automatically. First, the equipment must be able to generate random or sequential numbers. Otherwise, it cannot have the capacity to do anything "using a *random* or *sequential* number generator." 47 U.S.C. § 227(a)(1) (emphasis added). Second, the equipment must be able to use that random or sequential number generator in order to store or produce telephone numbers. *Id.* (". . . capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* § 227(a)(1)(A). Third, the equipment must be able to dial those telephone numbers. *Id.* § 227(a)(1)(B). The terms of the definition—"dial such numbers," *Id.*—refer back to the "telephone numbers" that were

stored or produced "using a random or sequential number generator." *Id*. § 227(a)(1)(A).

Finally, the equipment must be capable of performing these functions automatically, without human intervention. "[The] 'automatic' in 'automatic telephone dialing system,' would seem to envision non-manual dialing of telephone numbers." *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018) (internal citation omitted).[1]

---

[1] It is true that the Federal Communications Commission ("Commission") has issued a series of orders that could be interpreted to mean that a device can be an ATDS irrespective of the capacity to dial randomly or sequentially, and that a predictive dialer is an ATDS. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 132 (2003) ("2003 Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2008) ("2008 Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, ¶ 2 n.5 (2012) ("2012 Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 Order"). The D.C. Circuit, however, wiped away these interpretations in its recent decision in *ACA International*. *See* 28 U.S.C. § 2342 ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47."). However, the Commission's interpretation from 2003 to 2015 was "hardly a model of clarity." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015). And the D.C. Circuit vacated the Commission's interpretation of the functions of an ATDS (as embodied in the 2003, 2008, 2012, and 2015 Orders) in *ACA International*.

Specifically, the Court explained that the Commission's interpretation was arbitrary and capricious because it failed to articulate a comprehensible test. In some places, the Commission suggested that "a device must itself have the ability to generate random or sequential telephone numbers to be dialed." *ACA Int'l*, 885 F.3d at 701. In others, the Commission suggested that it is "enough that the device can call from a database of telephone numbers generated elsewhere." *Id*. Similarly, the Commission had espoused "competing" views about the status of predictive dialers. In some places, the Commission suggested that "predictive dialers . . . qualify as ATDSs" irrespective of whether they have the capacity "to generate random or sequential phone numbers." *Id*. at 702. In others, the Commission suggested that equipment "must be able to generate and dial random or sequential numbers to meet the TCPA's definition." *Id*. In sum, the Commission, "while speaking to the question [of the definition of ATDS] in several ways, g[ave] no clear answer." *Id*. at 702–03. Rather, the Commission adopted "competing interpretations"—a

Under the plain meaning of the TCPA, only the capacity to conduct random and sequential dialing renders a device an ATDS; the capacity to conduct predictive dialing does not. *See Marshall v. CBE Group, Inc.*, No.: 2:16–cv–02406–GMN–NJK, 2018 WL 1567852, *5 (D. Nev. Mar. 30, 2018) ("In light of [*ACA International*], this Court will not stray from the statute's language"); *id*. at *7 ("The D.C. Circuit rejected [the Commission's] interpretation of the TCPA, particularly as that definition pertained to systems that may not, in fact, have the capacity to dial randomly or sequentially. Accordingly, Plaintiff cannot rely on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers"); *Pinkus v. Sirius XM Radio, Inc*., No. 16 C 10858, 2018 U.S. Dist. LEXIS 125043, at *125072 (N.D. Ill. July 26, 2018) ("So, the phrase 'using a random or sequential number generator' necessarily conveys that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers.").

### b.    Defendant did not use random or sequential dialing

The evidence clearly indicates that Defendant did not use random or sequential dialing.  Mirand employed a dialing system engineered by DialConnection, DC Contact Center Enterprise, to generate calls. Exhibit 2. DC Contact Center Enterprise does not have the ability to "store or produce numbers to be called using a random or sequential number

---

result incompatible with "reasoned decisionmaking." *Id*. The D.C. Circuit therefore "set aside the Commission's treatment" of the functions of an ATDS as arbitrary and capricious. *Id*. at 703.

generator." Exhibit 2 ¶ 9. Nor does DC Contact Center Enterprise have the potential capacity to add such a feature. Exhibit 2 ¶ 10. Instead, Mirand's agent is required to select the specific phone numbers to be dialed in a particular call campaign. Exhibit 2 ¶ 5.

c.     <u>Defendant's dialer requires human intervention</u>

Moreover, Defendant's dialer requires human intervention to generate calls. Exhibit 2 ¶ 5. Each dialing campaign initiated through DialConnection requires a human agent to activate a process to upload data to the system. Exhibit 2 ¶ 5. Further, a call cannot be launched without a human agent scheduling a campaign and loading the campaign with the phone numbers to be dialed. Exhibit 2 ¶ 5. In fact, Defendant's IT employee loads phone numbers into the system ten (10) to fifteen (15) times each day. Exhibit 4 at 32:6-33:18. Then, an employee must "process and load each campaign with the data, including the phone number that have to be dialed." *Id.* at 33:15-22. Then, another employee must schedule the campaign to run. *Id.* at 38:15-17. And finally, a collection agent must be "logged into the call campaign" for the call to be able to launch. *Id.* at 47:8-10. In short, there are multiple instances of human intervention that must occur for a call to be made. Given the above-outlined state of the law surrounding the interpretation of the term, ATDS, and the characteristics of Defendant's dialer, this Court should find that Defendant's dialing system is not an ATDS and deny Plaintiff's TCPA claim as a matter of law.

2.    *Plaintiff gave consent to being called*

Even if this Court finds that Defendant utilized an ATDS, which it did not, Plaintiff's TCPA claim still fails as a matter of law, because Plaintiff gave her consent to being called by an ATDS after previously revoking her consent.

The FCC as well as this Court have instructed that providing a cell phone number on the Credit Application constitutes a prior express consent to be contacted on that cell phone using an automated telephone dialing system. *Cherkaoui v. Santader Consumer U.S., Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564 (2008); *Cunningham v. Credit Mgmt., L.P.*, 3:09–CV–1497–GB(BF), 2010 WL 3791104 at *4–5 (N.D. Tex. Aug. 30, 2010) report and recommendation adopted, 3:09–CV–1497–G(BF), 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010); *Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744, 753 (W.D. Tex. 2011)).

Furthermore, Consent is required, but "a debtor does not need to give h[er] consent to automated calls specifically; h[er] general consent to being called . . . constitutes 'prior express consent.'" *Saragusa v. Countrywide*, No. 14-2717, 2016 U.S. Dist. LEXIS 34544, at *9 (E.D. La. Mar. 17, 2016) (quoting *Hill v. Homeward Residential, Inc*., 799 F.3d 544, 552 (6th Cir. 2015)). In other words, consent, without a limiting instruction, establishes general consent. *See Hill*, 799 F.3d at 552 (holding that in a debtor-creditor context, "once the debtor gives his consent to be called on his cellphone, the creditor can use automated calls to that number"); *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 880 (11th Cir. 2016) (holding that "the provision of a mobile phone number, without limiting instructions, suffices to establish the consumer's general consent to be called under the TCPA.").

In the present case, Plaintiff gave her prior express consent to be contacted at her at any number associated with her account with Woodforest National Bank using an ATDS. Exhibit D.

The evidence also shows that Defendant spoke with Plaintiff twice regarding consent to be contacted. Exhibit 1 at 2 ¶ 10; Exhibit A. During the March 8, 2017 call, Plaintiff initially revoked consent to be called via an ATDS. Exhibit B at 01:28; Exhibit E at 1. However, later in the same call, Plaintiff consented to Defendant calling her back. *Id.* at 08:20; Exhibit E, at 5, 7. Further, in her deposition testimony, Plaintiff admitted that she wanted Defendant to call her back:

> Q.     Okay. But you did want [Defendant] to call you back to see if you could resolve it, right?
>
> A.     Yes.
>
> . . .
>
> A.     . . . I told them to call me back in March.

Exhibit 3 at 20:25-21:2, 23:10. Moreover, Plaintiff testifies that she did not care whether an ATDS was used to call her back:

> Q.     . . . [D]id you care what kind of technology they [Defendant] used to make  the call to you?
>
> A.     No.

*Id.* at 40:6-8. Plaintiff did not attach a limiting instruction to her consent, and therefore a general consent was established. *See Hill*, 799 F.3d at 552; *Lawrence*, 666 F. App'x at 880. Although Plaintiff did not give specific consent to be called by ATDS, only general consent is necessary. *See Saragusa*, 2016 U.S. Dist. LEXIS 34544 at *9; *Hill*, 799 F.3d at 552.

Accordingly, Defendant's calls to Plaintiff between March 8, 2017 and May 2, 2017 were made with prior express consent.

During the May 2, 2017 call, Plaintiff again revoked consent to be called via an ATDS. Exhibit C at 02:16; Exhibit F at 2. Plaintiff did not go back and forth regarding communication consent during this call, and accordingly, Defendant ceased calling Plaintiff. Exhibit A.  Defendant ceased all calls to Plaintiff on May 2, 2017. Exhibit 1 at 3 ¶ 14; Exhibit A.

Because Plaintiff gave general consent during the March 8, 2017 phone call and Defendant stopped calling after the revocation of consent during the May 2, 2017 call, Defendant did not violate the TCPA. Accordingly, Defendant respectfully requests that this Court grant Mirand summary judgment on the TCPA claims.

## CONCLUSION

Plaintiff's FDCPA and TCPA claims must fail. Plaintiff never requested to Defendant that it cease its calls to her, but Defendant ceased calling once Plaintiff as soon as it received a hint that Plaintiff may not wish calls to be made to her.  Further, Defendant does not use an ATDS as it does not involve use random and sequential dialing and requires human intervention. Finally, even if Defendant did use an ATDS, Plaintiff gave consent.

WHEREFORE, Defendant Mirand Response Systems, Inc. respectfully requests that this Court grant its *Motion for Summary Judgment* in its entirety, dismiss all claims against Defendant, and for any other relief Defendant is entitled to at law or in equity.

Dated: April 12, 2019                    Respectfully submitted,

                                         **MALONE AND MARTIN PLLC**

                                         */s/ Robbie Malone*
                                         ROBBIE MALONE
                                         State Bar No. 12876450
                                         Email: rmalone@mamlaw.com
                                         EUGENE XERXES MARTIN, IV
                                         State Bar No. 24078928
                                         Email: xmartin@mamlaw.com
                                         JIN S. SHIN
                                         State Bar No. 24096295
                                         Email: jshin@mamlaw.com
                                         8750 N. Central Expry, Suite 1850
                                         Dallas, Texas 75231
                                         TEL: (214) 346-2630
                                         FAX: (214) 346-2631

                                         ***COUNSEL FOR DEFENDANT***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded **via email and CMRRR** on this 12th day of April, 2019.

> Amy L. Bennecoff Ginsburg
> Joseph C. "Jake" Hoeffel
> Kimmel & Silverman PC
> 30 E. Butler Pike
> Ambler, PA 19002
> aginsburg@creditlaw.com
> jhoeffel@creditlaw.com

                                         */s/ Jin S. Shin*
                                         JIN S. SHIN